JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Samsel Rope Marine Supply Co. ("Samsel"), appeals the decision of the trial court, which denied its motion for summary judgment and instead granted summary judgment in favor of appellee, Barbara Burgess ("Burgess"), the executor of the estate of Robert L. Soltz ("Soltz"). In addition, Burgess presents a cross-appeal arguing that the trial court erred when it dismissed her third-party complaint for indemnification against Harold D. Gray ("Gray"). After a thorough *Page 2 
review of the arguments and for the reasons set forth below, we affirm the judgments of the trial court.
 {¶ 2} This case arises out of a commercial lease for space formerly occupied by the Watermark Restaurant, located in Cleveland in an area known as the east bank of the Flats. Samsel owned the commercial property and on May 30, 1985, it leased the ground floor and adjacent terrace of the building to Old River, the operator of the Watermark Restaurant. Soltz was the president of Old River, and he was also its majority shareholder. As a part of the lease transaction between Old River and Samsel, Soltz executed a guarantee in favor of Samsel, which guaranteed the payment of all rents of the subject lease and the performance by Old River of all other terms and conditions of the lease, with a maximum aggregate liability of $100,000.
 {¶ 3} Soltz died on February 6, 1994, and Barbara Burgess was appointed the executor of his estate on April 14, 1994. On December 31, 1994, Burgess sold all of the Old River stock owned by Soltz to Gray, Old River's general manager.
 {¶ 4} The original lease agreement between Old River and Samsel was to expire on August 31, 1995. Pursuant to the lease agreement, Old River had an option to extend the lease for at least one additional five-year term by giving written *Page 3 
notice of its intent on or before August 31, 1994. Old River did not provide this written notice. Instead, on August 8, 1994, Gray, on behalf of Old River, wrote Samsel asking for an indefinite extension of the option period. Samsel responded by granting an extension to exercise the option until November 15, 1994 to allow sufficient time for the parties to come to an amicable agreement.
 {¶ 5} On September 20, 1994, Samsel and Gray entered into a new agreement wherein they agreed they would be bound by the terms of the original lease for an additional five-year term. That agreement between Samsel and Gray was extended for yet another five-year term in May 1999.
 {¶ 6} During 2002, Old River defaulted under the lease with Samsel. On September 30, 2003, Samsel filed a complaint against Old River in the Cleveland Municipal Court. On December 30, 2003, Samsel and Old River executed an agreed judgment entry, in which Samsel was granted a judgment against Old River in the amount of $513,000.
 {¶ 7} Samsel presented four separate letters to Burgess, asserting a claim against the estate of Soltz. At the time the first letter was sent, Old River was in arrears for the payment of the June 1994 rent and May 1994 utilities; however, those defaults were cured by checks written by Old River to Samsel dated June 17 and *Page 4 
June 24, 1994. By the time Samsel sent its second claim letter on June 27, 1994, Old River was no longer in default. Samsel presented its third claim against Soltz on October 27, 2003, while its complaint in forcible entry and detainer was pending. Samsel presented its fourth claim against Soltz on January 15, 2004.
 {¶ 8} On February 24, 2004, Samsel filed a complaint against Burgess alleging that Soltz's estate was liable on a personal guarantee entered into by Soltz for the Old River commercial lease. On April 14, 2004, Burgess filed an answer denying liability to Samsel. On June 10, 2004, Gray filed an answer to the complaint, denying any liability to the estate of Soltz. Each of the parties to this case filed motions for summary judgment. On December 15, 2004, Samsel filed a motion for summary judgment upon its claims against Burgess. On December 29, 2004, Burgess filed a motion for summary judgment in reference to Samsel's claims against Soltz's estate, and on January 14, 2004, Gray filed a motion for summary judgment as to Burgess' third-party complaint against him.
 {¶ 9} On March 10, 2005, the trial court denied Gray's motion for summary judgment, and on May 6, 2005, Samsel's motion for summary judgment was denied as well. Within the order that denied Samsel's motion for summary judgment, the trial court granted summary judgment in favor of Burgess. When the trial court *Page 5 
granted Burgess' motion for summary judgment, it dismissed her third-party complaint for indemnification against Gray.
 {¶ 10} On April 26, 2006, Samsel filed this appeal. Burgess filed her notice of cross-appeal on May 2, 2006, and on May 22, 2006, Gray filed notice of cross-appeal.
 Appeal by Samsel Rope Marine Supply Co. {¶ 11} In its appeal, Samsel cites two assignments of error. Because they are substantially interrelated, they are addressed together.
 {¶ 12} "I. The trial court erred in granting summary judgment to Defendant-Appellee and denying summary judgment to Plaintiff-Appellant on the issue of whether a valid modification of a lease and the time period to exercise an option bound Defendant-Appellee, who was a surety of obligations under the lease.
 {¶ 13} "II. The trial court erred in denying Plaintiff-Appellant summary judgment on the issue that Plaintiff-Appellant properly presented a claim to Defendant-Appellee in accordance with Ohio Revised Code Sections 2117.06 and/or 2117.37."
 {¶ 14} Samsel argues that the trial court erred when it denied its motion for summary judgment and granted summary judgment in favor of Burgess. More *Page 6 
specifically, Samsel asserts that Old River validly extended the option period under the lease agreement, which continued to bind Soltz as a surety. In addition, Samsel contends that summary judgment should also have been awarded in its favor because it properly presented a claim against Burgess, who was a surety of obligations under the lease agreement.
 {¶ 15} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 16} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved *Page 7 
in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 17} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact ormaterial element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 18} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if *Page 8 
reasonable minds could find for the party opposing the motion."Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24;Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741,607 N.E.2d 1140.
 {¶ 19} Samsel relies on the language of the original 1985 lease it entered into with Soltz to support its argument that Soltz is still bound to the agreement as a surety. The language of the guarantee provision of the original agreement provides:
 {¶ 20} "It is hereby agreed that no modification, extension, indulgence, forbearance or change granted to the Lessee, its successors or assigns, shall release the undersigned from this guarantee or diminish his liability hereunder."
 {¶ 21} Although this language appears to support Samsel's argument, it only refers to extensions or renewals made within the strict confines of the original lease, which was executed by Soltz as a guarantor. Soltz's guarantee of the original lease covered any extensions or renewals concerning only that lease. Under the original 1985 lease entered into between Soltz and Samsel, the provision for renewal required the lessor to give notice of the five-year renewal option at least one year before the end of the lease, which would have been August 31, 1994. The facts indicate that renewal notice was not given before the expiration of the deadline. *Page 9 
 {¶ 22} Old River and Samsel mutually agreed to waive the original deadline and enter into a new agreement, wherein they decided to renew the original terms of the lease for an additional five years. This extension was valid as it pertained to the new agreement entered into between Old River and Samsel; however, it was not enforceable against Soltz, the guarantor of the original 1985 lease. Soltz only agreed to guarantee extensions and renewals of the original lease. To hold otherwise would be as though he were contracting from the grave.
 {¶ 23} The facts clearly indicate that the actions by Old River and Samsel of entering into a new agreement constituted a novation, releasing Soltz from liability. Accordingly, summary judgment in favor of Burgess was proper, and Samsel's assignments of error are overruled.
 Cross-Appeals {¶ 24} Burgess filed a third-party complaint for indemnification against Gray and cross-appeals the trial court's ruling on that issue. Because the cross-assignments of error cited by Burgess and Gray are substantially interrelated, they are addressed together.
 Barbara Burgess' Cross-Assignment of Error *Page 10 {¶ 25} "I. The Trial Court erred in dismissing Burgess' Third-Party Complaint for indemnification."
 Harold D. Gray's Cross-Assignment of Error {¶ 26} "I. The trial court was correct in dismissing the estate's Third-Party complaint seeking indemnification from Gray since the Estate breached the December 31, 1994, agreement entered into between Estate, Old River and Gray."
 {¶ 27} Burgess argues that the trial court abused its discretion when it dismissed her third-party complaint for indemnification. She asserts that the December 31, 1994 agreement she entered into with Gray, whereby Gray purchased Soltz's remaining Old River stock, contained a valid indemnification clause. She further contends that, because the agreement entered into between Gray and Soltz was valid, the indemnification clause should be upheld.
 {¶ 28} To the contrary, Gray argues that the trial court did not abuse its discretion when it dismissed Burgess' third-party complaint. He asserts that Soltz's estate breached the December 31, 1994 agreement, thus, the indemnification clause within the agreement cannot be enforced. *Page 11 
 {¶ 29} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140.
 {¶ 30} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984), 15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 31} We find merit in Gray's argument. Although Burgess contends that the agreement she entered into with Gray is valid, thus, the indemnification clause located within that agreement should be enforced, Burgess failed to adequately notify Gray regarding claims against the estate before they entered into the agreement. The agreement between the parties specifically provided that all known claims must be disclosed. The disclosure provision of the agreement provides:
 {¶ 32} "Disclosures: Gray and the Corporation on the one hand, and the estate on the other, represent and warrant to the other that to the best of their knowledge *Page 12 
and belief, there are no claims which have not been accurately, completely and truthfully disclosed to the other in writing, and such representations and warranty shall survive the closing."
 {¶ 33} Although Burgess had received numerous letters from Samselasserting claims against Soltz's estate, she did not disclose those claims to Old River prior to entering into the December 31, 1994 agreement with Gray. It is important to note that the indemnification Burgess seeks from Gray arose from the claims asserted by Samsel.
 {¶ 34} Although Samsel was ultimately unsuccessful in its claims against Soltz's estate, Burgess still had a duty to disclose those claims to Gray prior to entering into any agreement with him. It is clear that Burgess breached the terms of the agreement when she failed to inform Gray of the existing claims and, as a result, the indemnification clause located within the agreement cannot be enforced.
 {¶ 35} The trial court's actions were not unreasonable, arbitrary, or unconscionable when it dismissed Burgess' third-party complaint for indemnification. Accordingly, the trial court did not abuse its discretion, and we find no merit in Burgess' cross-appeal.
 Judgment affirmed. *Page 13 
It is ordered that appellants and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 CHRISTINE T. McMONAGLE, J., AND PATRICIA ANN BLACKMON, J., CONCUR. *Page 1